USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 1/14/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NETSOC, LLC,

                Plaintiff,

      v.

LINKEDIN CORP.,

                Defendant.

MEMORANDUM OPINION & ORDER

No. 18-CV-12215 (RA)

---

NETSOC, LLC,

                Plaintiff,

      v.

OATH INC.,

                Defendant.

No. 18-CV-12267 (RA)

---

RONNIE ABRAMS, United States District Judge:

      Plaintiff NetSoc, LLC filed claims for patent infringement against Defendants Chegg Inc., LinkedIn Corp., Quora Inc., and Oath Inc., in four separate actions that were consolidated through claim construction.[1] *See* Dkt. 23.[2] Now before the Court is Defendant LinkedIn's motion to transfer the action against it to the Northern District of California pursuant to 28 U.S.C. § 1404(a). For the following reasons, the motion is granted.

---

[1] On October 2, 2019, the action against Defendant Quora Inc. was transferred to the Northern District of California, *see* No. 18-CV-12250, Dkt. 72, and yesterday, the action against Chegg Inc. was dismissed on collateral estoppel grounds, *see* No. 18-CV-10262.

[2] Unless otherwise noted, this opinion cites submissions filed on the docket in *NetSoc, LLC v. LinkedIn Corp.*, No. 18-CV-12215.

## BACKGROUND[3]

### I. Procedural History

Plaintiff filed a complaint against LinkedIn on December 26, 2018. It asserted that LinkedIn's website infringes U.S. Patent No. 9,978,107 (the "'107 Patent") and U.S. Patent No. 7,565,344 (the "'344 Patent"), which Plaintiff owns by assignment. *See* Dkt. 1, Compl. ¶¶ 7, 13. Both patents are described generally as "a method and system for establishing and using a social network to facilitate people in life issues." *Id.* ¶¶ 8, 14.

On March 4, 2019, LinkedIn filed a motion to dismiss the complaint. *See* Dkt. 19. On May 24, LinkedIn filed the present motion to transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a). *See* Dkt. 35. In July, the Court stayed discovery pending resolution of these and other motions in the four actions. *See* Dkt. 44. In spite of the fact that it also has pending a motion to dismiss, LinkedIn has requested that the Court first resolve its motion to transfer. *See* Dkt. 70 ("LinkedIn maintains its position as stated during the Status Conference on August 27, 2019, that it would be procedurally proper to resolve LinkedIn's pending Motion to Transfer . . . before reaching issues of collateral estoppel as to LinkedIn.").[4]

---

[3] The facts in this section are drawn from Plaintiff's complaint unless otherwise stated, *see* Dkt. 1, and are accepted as true for the purposes of this motion. *See Peerless Network, Inc. v. Blitz Telecom Consulting, LLC*, No. 17-CV-1725 (JPO), 2018 WL 1478047, at *1 (S.D.N.Y. Mar. 26, 2018). When reviewing a § 1404(a) motion, the Court may also consider materials outside of the pleadings. *See Garcia v. Pearson Educ., Inc.*, No. 15-CV-7289 (KPF), 2016 WL 5921083, at *4 (S.D.N.Y. Oct. 7, 2016). LinkedIn submitted several documents, including declarations from Jared Goralnick ("Goralnick Decl."), the Group Manager in Product Management at LinkedIn, and Vidya Chandra ("Chandra Decl."), the Principal Product Manager at LinkedIn, which the Court refers to throughout the opinion.

[4] On August 28, 2019, the Court ordered supplemental briefing as to "whether Plaintiff's claims against [LinkedIn] are barred by collateral estoppel" in light of the United States District Court of the Northern District of Texas's July 22, 2019 decision that Plaintiff's '107 Patent was ineligible under 35 U.S.C. § 101. Dkt. 53; *see also NetSoc, LLC v. Match Grp., LLC*, No. 18-CV-1809, 2019 WL 3304704 (N.D. Tex. July 22, 2019).

2

## II.     The Parties

Plaintiff is a Texas limited liability company with its principal place of business in Harris County, Texas. *See* Dkt. 1, Compl. ¶ 1. In April 2018, Emily White, the inventor of the '107 Patent and '344 Patent, assigned the rights to these patents to Plaintiff. *See* Dkt 35, Ex. B (Patent Assignment Cover Sheet). Plaintiff alleges that "LinkedIn maintains, operates, and administers a website at www.LinkedIn.com that infringes one or more claims of the '107 patent" and "of the '344 patent." Dkt. 1, Compl. ¶¶ 9, 15. Plaintiff specifically identifies two of LinkedIn's services – "Recruiter" and "ProFinder" – as the services that infringe on these two patents. *See id.* ¶¶ 10-11, 16-17.

LinkedIn is a domestic corporation organized under the laws of Delaware. Plaintiff alleges that LinkedIn's principal place of business is in New York City. *See id.* ¶ 2. LinkedIn disputes this, asserting that its principal place of business is in Northern California. According to LinkedIn, it "has been located in the San Francisco Bay Area since its founding in Mountain View, California in 2003." Goralnick Decl. ¶ 5. Its headquarters – described as "the strategic center of LinkedIn's business" – are presently located in Sunnyvale, California, and it has "multiple, additional large offices in the San Francisco Bay Area." *Id.* As such, it employs approximately 6,500 employees in Northern California. *See id.*

LinkedIn acknowledges that it has had an office in New York since 2011. Nonetheless, it contends that employees in that office focus only on "marketing and sales activities," and that "[e]mployees in the San Francisco Bay Area ultimately oversee" the New York office's work. Chandra Decl. ¶ 13. In particular, according to LinkedIn, all "operations relevant to the design, development, marketing, and function of" its services related to this patent infringement action

3

"reside in its Sunnyvale, Mountain View, and San Francisco offices." Goralnick Decl. ¶¶ 7, 12; Chandra Decl. ¶¶ 7, 12.

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). "In considering whether to grant a venue transfer, courts engage in a two-part test: (1) whether the action 'might have been brought' in the proposed transferee forum; and (2) whether the transfer promotes convenience and justice." *Excelsior Designs, Inc. v. Sheres*, 291 F. Supp. 2d 181, 185 (E.D.N.Y. 2003) (quoting *Schertenleib v. Traum*, 589 F.2d 1156, 1161 (2d Cir. 1978)). "The moving party bears the burden of showing, by clear and convincing evidence, that a transfer is appropriate." *Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 229 (S.D.N.Y. 2013). "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).

## DISCUSSION

### I. Whether the Action Might Have Been Brought in the Northern District of California

"An action 'might have been brought' in another forum if venue would have been proper there and the defendants would have been amenable to personal jurisdiction in the transferee forum when the action was initiated." *Wang v. Phx. Satellite Television US, Inc.*, No. 13-CV-218 (PKC), 2014 WL 116220, at *2 (S.D.N.Y. Jan. 13, 2014) (citation omitted). Plaintiff does not dispute that this matter "could have been brought in the Northern District of California," Dkt. 35 at 7, and the Court agrees. Accordingly, § 1404(a)'s first requirement is satisfied. The

4

remaining inquiry is, therefore, "whether the transfer promotes convenience and justice." *Excelsior Designs, Inc.*, 291 F. Supp. 2d at 185.

## II. Whether the Transfer Promotes Convenience & Justice

In determining whether a transfer would promote convenience and justice, courts weigh certain factors including: "(1) the convenience of witnesses, (2) the convenience of the parties, (3) the locus of operative facts, (4) the availability of process to compel the attendance of unwilling witnesses, (5) the location of relevant documents and the relative ease of access to sources of proof, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances." *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*, 119 F. Supp. 2d 433, 436 (S.D.N.Y. 2000); *see also Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 396 (S.D.N.Y. 2014) (explaining that "[t]he convenience of the witnesses and the locus of the operative facts of the case" are given the most consideration in this analysis).

### A. Convenience of Witnesses

"Courts typically regard the convenience of witnesses as the most important factor in considering a § 1404(a) motion to transfer." *Rosen v. Ritz-Carlton Hotel Co.*, No. 14-CV-1385 (RJS), 2015 WL 64736, at *3 (S.D.N.Y. Jan. 5, 2015). A party seeking a transfer based on this factor "must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Liberty Mut. Ins. Co.*, 17 F. Supp. 3d at 396 (citation omitted). "In the context of a patent infringement suit, a court should give particular consideration to individuals who can testify about the technology of the allegedly infringing inventions." *Int'l*

*Sec. Exch., LLC v. Chi. Bd. Options Exch. Inc.*, No. 06-CV-13445, 2007 WL 1541087, at *3 (S.D.N.Y. May 24, 2007).

In arguing for a transfer, LinkedIn relies heavily on the fact that the majority of its witnesses are based in Northern California. It emphasizes that key witnesses on its behalf are employees on its "development, engineering, and management" team, who are "most knowledgeable about LinkedIn's accused technologies." Dkt. 35 at 9. Because these employees reside in Northern California, they would "face the disruption of traveling across the country" if the action remains in this district. *Id.* The Court agrees with LinkedIn that these witnesses are highly relevant, as they are those who can speak best to "the technology of the allegedly infringing inventions." *Int'l Sec. Exch., LLC*, 2007 WL 1541087, at *3. The witnesses' proximity to the proposed transferee forum is thus particularly significant in this analysis.[5]

LinkedIn further notes that relevant non-party witnesses are also based in California. *See* Dkt. 1, Ex. A, B; Dkt. 35, Ex. B, C. "[T]he convenience of non-party witnesses is weighed more heavily than that of party witnesses." *Rosen*, 2015 WL 64736, at *3. Here, LinkedIn identifies two specific non-party witnesses – White, the patents' inventor, and the patents' prosecuting attorneys. In this type of patent action, these two types of non-party witnesses are generally deemed very useful. *See Smart Skins LLC v. Microsoft Corp.*, No. 14-CV-10149 (CM), 2015 WL 1499843, at *7 (S.D.N.Y. Mar. 27, 2015) ("[I]nventors named in the patents in suit . . . would of course provide material testimony about the patented inventors and the technology used in those inventions."); *see also In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010)

---

[5] LinkedIn has not identified specific employees that might serve as witnesses, and instead only describes potential witnesses as "employees most knowledgeable about LinkedIn's accused technologies." Dkt. 35 at 9-10. "While it is true that usually courts do not consider the convenience of such unspecified, unnamed witnesses in the transfer analysis, here the Court will do so because it has enough information to enable the trial court to balance the parties' interests." *IKB Int'l S.A. v. Wilmington Tr. Co.*, No. 16-CV-4917 (RA), 2017 WL 4084052, at *5 (S.D.N.Y. Sept. 14, 2017) (internal citations and alterations omitted).

(accounting for the convenience of the patent's "inventor and prosecuting attorneys" as witnesses in its § 1404(a) analysis). LinkedIn, therefore, correctly argues that the inconvenience posed – in expenses and day-to-day disruptions – in bringing these non-party witnesses to this district can be significantly minimized by transferring the case to the Northern District of California.[6]

Plaintiff, on the other hand, has not identified a single witness for whom keeping the action in this district would be more convenient. Nor does it dispute the likely inconveniences for witnesses that LinkedIn has described. Instead, Plaintiff only offers to delay and/or lessen any inconvenience by "mak[ing] inventor Emily White available for deposition in [N]orth California and for trial in New York" and that "the LinkedIn witnesses will not be inconvenienced because their depositions would occur in the San Francisco Bay area (or other location as the parties will agree to)." Dkt. 41 at 3. But this fails to address that the simpler solution for party and non-party witnesses would be moving this case to another district.

In light of LinkedIn's legitimate concern that important witnesses – current and former employees, who are most knowledgeable about the allegedly infringing services, and the patent's inventor – are all based in California, this factor weighs heavily in favor of transferring the case.

### B. Convenience of the Parties

The convenience of the parties is also a relevant factor. For LinkedIn, litigating the case in the Northern District of California is evidently more convenient. Not only are its headquarters located there, but it is also where its employees who work on the Recruiter and ProFinder

---

[6] LinkedIn raises a related and pertinent point, noting that, in the event that these non-party witnesses refuse to appear, this Court would lack the authority to compel them to do so. *See Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 746 (S.D.N.Y. 2013) (explaining that the ability of a court to compel the attendance of unwilling witnesses is a "factor [that] is closely aligned with the first – witness convenience"). The Court's authority to "command a person to attend a trial, hearing, or deposition" only applies "within 100 miles of where the person resides, is employed, or regularly transacts business in person; or . . . within the state where the person resides, is employed or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A)-(B); *see* Dkt. 35 at 10-11. The Court thus considers this an additional reason weighing in favor of transferring the action.

services reside. *See* Goralnick Decl. ¶ 8; Chandra Decl. ¶ 8. Moreover, it is where "[t]he overwhelming majority of [its] documents and relates related to the [two] service[s] are located." *See* Goralnick Decl. ¶ 11; Chandra Decl. ¶ 11.

By contrast, Plaintiff's convenience would not be affected if the action were transferred. Plaintiff is based in Texas, *see* Dkt. 1, Compl. ¶ 1, and thus already chose to litigate in a forum that requires travel and increased expenses. Whether the case now proceeds in New York or California does not change that fact or pose any additional burden. Because "[t]he convenience of the parties favors transfer when transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant," this factor also favors granting LinkedIn's motion. *Sentegra, LLC v. ASUS Comput. Int'l*, No. 15-CV-3768 (GHW), 2016 WL 3093988, at *4 (S.D.N.Y. June 1, 2016).

### C. Locus of Operative Facts

The locus of operative facts "will substantially favor[] transfer from this district when a party has not shown that any of the operative facts arose in the Southern District of New York." *Berger v. Cushman & Wakefield of Pa., Inc.*, No. 12-CV-9224 (JPO), 2013 WL 4565256, at *10 (S.D.N.Y. Aug. 28, 2013) (citation omitted). "To determine the locus of operative facts, a court must look to the site of the events from which the claim arises." *Ivy Soc'y Grp., LLC v. Baloncesto Superior Nacional*, No. 08-CV-8106 (PGG), 2009 WL 2252116, at *6 (S.D.N.Y. July 28, 2009). "Operative facts in a patent infringement action include facts relating to the design, development, and production of a patented product." *Invivo Research, Inc.*, 119 F. Supp. 2d at 439.

Here, the operative facts took place entirely in Northern California. White developed her inventions, which evolved into the patents at issue here, in Mountain View, California. *See* Dkt.

8

1, Ex. A. Separately, LinkedIn developed its Recruiter and ProFinder services – the two allegedly infringing services – in Northern California, and it continues to manage the services from that area today. *See* Goralnick Decl. ¶¶ 7, 12; Chandra Decl. ¶¶ 7, 12.

Plaintiff contends that, because LinkedIn has utilized these services in New York, the "infringement does occur in New York, and New York is a 'locus of operative facts.'" Dkt. 41 at 4. That argument is unpersuasive. First, this patent infringement action is primarily about the development, production, and management of LinkedIn's Recruiter and ProFinder services, which is all based in California. While the New York office handles some "marketing and sales activities," even the product marketing for these two services occurs in California. *See* Goralnick Decl. ¶¶ 8, 13; Chandra Decl. ¶¶ 8, 13. Second, and more importantly, the fact that "LinkedIn's accused services are provided nationwide," and thus logically in New York, has little force. Dkt. 41 at 4. "[C]ourts have consistently found that where defendants' products are sold in many states, sales alone are insufficient to establish a material connection to the forum and to override the other factors favoring transfer." *Bionx Implants, Inc. v. Biomet, Inc.*, No. 99-CV-740 (WHP), 1999 WL 342306, at *4 (S.D.N.Y. May 27, 1999). Plaintiff, therefore, fails to identify any operative facts that tie its claim against LinkedIn to this district.

### D. Location of Relevant Documents

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *Millennium, L.P. v. Hyland Software, Inc.*, No. 03-CV-3900 (DC), 2003 WL 22928644, at *4 (S.D.N.Y. Dec. 10, 2003). "Consequently, the place where the defendant's documents are kept weigh in favor of transfer to that location." *Id.*

At first glance, this factor also seems to warrant granting LinkedIn's transfer request. LinkedIn asserts that the "documents and records related to the [accused] service[s] are located

9

in LinkedIn's Sunnyvale headquarters or San Francisco Bay Area offices, or are maintained on secure servers located in or accessible from LinkedIn's Sunnyvale headquarters or San Francisco Bay Area offices." Goralnick Decl. ¶ 11; Chandra Decl. ¶ 11. As Plaintiff points out, however, "[t]he documents in this case will be electronically produced, and thus are portable." Dkt. 41 at 3. In light of new technology making it easier to transport documents, courts have reached different conclusions as to what weight to give this factor in a § 1404(a) analysis. *Compare Constitution Reins. Corp. v. Stonewall Ins. Co.*, 872 F. Supp. 1247, 1251 (S.D.N.Y. 1995) ("[A]ccess to documents and other proof is not a persuasive factor in favor of transfer without proof that documents are particularly bulky or difficult to transport[.]"), *with Jackson v. Avis Rent A Car Sys., LLC*, No. 14-CV-1658 (LLS), 2015 WL 1004299, at *5 (S.D.N.Y. Mar. 6, 2015) ("While technological advances in storing, transferring, and reproducing documents have rendered this factor less important, it cannot be ignored."). The Court, therefore, considers this factor to be neutral in the overall analysis.

### E. Plaintiff's Choice of Forum

A plaintiff' choice of forum is generally "entitled to considerable weight." *Excelsior Designs, Inc.*, 291 F. Supp. 2d at 187. However, "a plaintiff's choice of forum diminishes . . . where . . . the operative facts upon which the litigation is brought bear little material connection to the chosen forum." *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 376 (S.D.N.Y. 2006). Plaintiff chose to bring this action in New York even though its claim against LinkedIn lacked any obvious connection to this district. As discussed previously, Plaintiff is based in Texas. It has not even reported transacting business in New York. And, for the reasons discussed in detail previously, Plaintiff's allegations about LinkedIn's allegedly infringing conduct also "bear little material connection to th[is] chosen forum." *Id.* Therefore, "while the

10

Court recognizes [Plaintiff's] preference for litigation [in this district], it concludes that Plaintiff's choice of forum is outweighed by concerns that favor transfer." *Fullwood v. SDH Servs. W., LLC*, No. 16-CV-1 (RA), 2016 WL 3951186, at *3 (S.D.N.Y. July 20, 2016).

### F. Forum's Familiarity with the Governing Law

This factor is "generally given little weight." *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 479 (S.D.N.Y. 2006). As numerous courts have noted, "any district court may handle a patent case with equal skill." *Smart Skins LLC*, 2015 WL 1499843, at *11.

### G. Trial Efficiency & the Interest of Justice

"Trial efficiency and the interest of justice are important factors in a § 1404(a) transfer analysis, and may be determinative in a particular case." *Liberty Mut. Ins. Co.*, 17 F. Supp. 3d at 397. As to this factor, Plaintiff presents two related arguments that transferring this action would lessen judicial efficiency.

Plaintiff first contends that transferring the case prior to claim construction would be inefficient because it has already been consolidated with three other pending actions in this district. Plaintiff does not seem to dispute that eventually transferring the action for trial might be proper, but argues that "joint litigation in this Court of claim construction and summary judgment practice is more efficient and better serves the interests of judicial economy." Dkt. 41 at 3; *see also id.* ("[S]plitting this defendant from the other three and transferring its case to another court creates the inefficient situation where two courts will have to decide issues of claim construction and risk producing conflicting claim construction decisions.").

As an initial matter, Plaintiff's argument is weakened because the Court already transferred one of the four consolidated actions – *NetSoc, LLC v. Quora Inc.* – to the Northern District of California on October 2, 2019, *see* No. 18-CV-12250, Dkt. 72, and dismissed another

on collateral estoppel grounds in a separate opinion filed yesterday, *see* No. 18-CV-10262. Even more significantly, Plaintiff fails to acknowledge the differences among the consolidated cases that cast doubt on how efficient joint litigation might be, even at this early stage. Not only do the two remaining actions involve different infringing products, but they also involve different patents. For instance, here, the '107 Patent and '344 Patent are at issue. In *NetSoc, LLC v. Oath Inc.*, No. 18-CV-12267, however, an entirely separate patent is now in dispute. Therefore, while the Court acknowledges that consolidating cases can help avoid duplicative discovery and lessen expenses, this is not an obvious instance where the two remaining actions benefit from being tried together.[7]

Focusing on efficiency in the present action is supported by recent case law cautioning courts against resolving a motion to transfer "principally on the basis of [related] pending suits." *See In re Google, Inc.*, 2017-107, 2017 WL 977038, at *2 (Fed. Cir. Feb. 23, 2017) (concluding the district court erred in denying the transfer motion based on "the mere co-pendency of related suits in a particular district"); *see also Sentegra, LLC*, 2016 WL 3093988, at *7 ("[P]arallel suits in separate district courts present no greater risk of inconsistent judgments than parallel suits in the current forum."). For these reasons, the Court believes that, particularly as "there has not yet been a significant investment by the Southern District of New York in this case in terms of either time or work," transferring the case would not impair trial efficiency. *Invivo Research, Inc.*, 119 F. Supp. 2d at 439.

Next, Plaintiff argues that LinkedIn "waived any objection as to venue" because it "explicitly agreed to consolidation and the schedule." Dkt. 41 at 2. This, however, is a

---

[7] Plaintiff also does not address that it affirmatively chose to bring two other actions, each raising an infringement claim involving the '107 Patent, in Texas. *See NetSoc, LLC v. Teladoc Health, Inc.*, No. 18-CV-542 (E.D. Tex. Dec. 21, 2018); *NetSoc, LLC v. Match Grp. LLC*, No. 18-CV-1809 (N.D. Tex. July 13, 2018).

mischaracterization of LinkedIn's role in the decision to consolidate the then-four pending actions. The Court approved consolidation after Plaintiff conferred with Defendant Chegg Inc. and those two parties agreed "that consolidation would be in the best interests of the Parties and promote judicial economy." Dkt. 23. LinkedIn did not participate in those discussions. *See* Dkt. 45 at 3 ("LinkedIn was not a party to the letter and did not sign it."). Additionally, in a status letter filed on August 20, 2019, LinkedIn wrote that, in light of recent developments in this litigation, it "believes that these actions should no longer be consolidated, as LinkedIn would only share a patent (the invalidated '107 Patent) with one other defendant (Defendant Chegg), and the '344 Patent is unique to LinkedIn." Dkt. 51. The Court, therefore, will not consider the consolidation of these cases to be a waiver of LinkedIn's § 1404(a) argument.

### H. Balancing of the Factors

In sum, all factors – and particularly the most critical ones in a § 1404(a) analysis – make clear that transferring this action to the Northern District of California would be convenient and just. "[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). Here, "[t]he convenience of the witnesses and the locus of the operative facts of the case," which "are typically regarded as primary factors in the balance-of-convenience inquiry," weigh heavily in favor of litigating this case in the proposed transferee forum rather than in this district. *Liberty Mut Ins. Co.*, 17 F. Supp. 3d at 396; *see also Burgos v. United States*, No. 16-CV-7091 (RA), 2017 WL 2799172, at *2 (S.D.N.Y. June 27, 2017) ("[C]ases are routinely transferred where, as here, 'the principal events occurred in another district and the principal witnesses are located there.'" (citation omitted)). Even factors that typically lean in a non-movant's favor, such as

choice of forum, provide little support here for Plaintiff. As LinkedIn states, Plaintiff "does not dispute that this case has *no* meaningful connection to the Southern District of New York, or that the Northern District of California is the clearly more convenient forum." Dkt. 45 at 1. And while the Court understands Plaintiff's argument that efficiency is gained by keeping the action in this district at least through claim construction, only two of the original four consolidated cases remain pending, and this factor fails to overcome the strength of the § 1404(a) analysis otherwise in favor of a transfer.

## CONCLUSION

For the foregoing reasons, the Court concludes that LinkedIn has made "a clear and convincing showing" that the relevant factors weigh in favor of transfer, and its motion is granted. *Solar v. Annetts*, 707 F. Supp. 2d 437, 441-42 (S.D.N.Y. 2010). The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 35 and to transfer this action against LinkedIn, No. 18-CV-12215, to the United States District Court for the Northern District of California.

Dated: January 14, 2020
New York, New York

RONNIE ABRAMS
United States District Judge